IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JERRY D. SCOGINS                                                                                PLAINTIFF

v.                    Civil No. 08-3059

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Jerry Scogins, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability, disability insurance benefits ("DIB"), and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**Procedural Background**

The plaintiff filed his applications for DIB and SSI on April 13, 2006, alleging an amended onset date of February 28, 2006[1], due to severe depression, a learning disability, traumatic encephalopathy with memory problems, dizziness, headaches, obesity, gastroesophageal reflux disorder ("GERD"), chronic back pain with muscle spasms, the residuals of a fracture of the right foot, and numbness in his arms and legs. (Tr. 11, 80, 171). His applications were initially denied and that denial was upheld upon reconsideration. (Tr. 28-33).

---

[1]Plaintiff originally alleged an onset date of February 12, 2004. However, at the administrative hearing, his attorney moved to amend his onset date. (Tr. 568).

Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on November 7, 2007. (Tr. 526-597). Plaintiff was present and represented by counsel.

At this time, plaintiff was 34 years of age and possessed a high school education with some special education course work. (Tr. 531-532). He had past relevant work ("PRW") as a fork lift operator, driver, construction laborer, lumber stacker, poultry marinator, and truss assembler. (Tr. 83-90, 532-549, 576-581).

On January 24, 2008, the ALJ found that plaintiff's degenerative joint disease of the back and left hip, obesity, gastroesophageal reflux disease ("GERD"), severe depression, recurrent headaches, and the residuals from a right foot fracture were severe but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 13). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform light work requiring only occasional climbing, stooping, bending, crouching, crawling, kneeling, and balancing. Plaintiff was also limited to jobs involving non-complex, simple instructions, little use of judgment, routine/repetitive tasks which are learned by rote with few variables, superficial contact with the public incidental to the work performed, and concrete, direct, and specific supervision. (Tr. 15). With the assistance of a vocational expert, the ALJ found plaintiff could perform work as a sewing machine operator, light assembly worker, and poultry evisceration/dresser/deboner. (Tr. 19, 583-590).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on August 12, 2008. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This

case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 10, 11).

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3),

3

1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

**Discussion**

Of particular concern to the undersigned is the ALJ's failure to properly consider all of plaintiff's impairments in combination when determining his RFC. The ALJ must consider the impairments in combination and not fragmentize them in evaluating their effects. *Delrosa v. Sullivan*, 922 F.2d 480, 484 (8th Cir. 1991) (citing *Johnson v. Secretary of Health & Human Servs.*, 872 F.2d 810, 812 (8th Cir. 1989). In the present case, therefore, the ALJ was obligated to consider the combined effect of [Plaintiff]'s physical and mental impairments. *Id. at 484, citing Reinhart v. Secretary of Health & Human Servs.*, 733 F.2d 571, 573 (8th Cir. 1984); *Wroblewski v. Califano*, 609 F.2d 908, 914 (8th Cir. 1979). It should be noted that plaintiff alleged numerous impairments. Under these circumstances, the Social Security Act requires the Commissioner to consider all impairments without regard to whether any such impairment, if considered separately, would be of sufficient medical severity to be disabling. *Cunningham v. Apfel*, 222 F.3d 496, 501 (8th Cir. 2000).

In the present case, plaintiff was repeatedly diagnosed with obesity, depression, dyslexia, numbness in his legs, and degenerative disk disease of the lower back and hip. In 2003, plaintiff sought treatment for back pain after a 75 pound roll of film rolled off a cart at work and struck him in the back. (Tr. 454-457). He reported pain between his shoulder blades. An examination revealed tenderness in the area of injury, however, x-rays were negative. Plaintiff was diagnosed with back pain and prescribed Darvocet. (Tr. 454-457). Thereafter, plaintiff was involved in a series of motor vehicle accidents, was injured while pushing a fork lift at work, and was butted

4

in the lower back by a bull. (Tr. 218-220, 268-269, 272, 287-288, 290, 301-303, 310-312, 332-342, 344-347, 349-355, 357-402, 428-433, 443-452, 454-457, 492-493, 503-507, 525). He consistently sought treatment for lower back pain and numbness in his lower extremities. X-rays of plaintiff's pelvis taken in 2006 demonstrated a slight irregularity at the very lateral aspect of the aceptabulum. (Tr. 272). It was noted that this could represent an old, small avulsion fracture as it did not appear acute. Further, an MRI of plaintiff's lumbar spine and left hip revealed disk desiccation at the L5-S1 level with some asymmetric left lateral disk protrusion which had caused some foramen narrowing. (Tr. 330).

On July 13, 2006, plaintiff was evaluated by Dr. Larry Armstrong, a neurosurgeon. (Tr. 478-479). Forward flexion of the lumbar spine, hyperextension, and side bending to either side all caused regional pain in the thoracodorsal and lumbosacral region. There was no SI joint tenderness or sciatic notch tenderness present. Structural spinal examination revealed no increased lumbar lordosis, thoracic kyphosis, or scoliosis. A straight leg raise was also negative. Dr. Armstrong reviewed the MRI of plaintiff's lumbar spine which he found revealed some disk desiccation at the L4-5 and L5-S1 with the L5-S1 level bing more affected. A small lateral disk protrusion was also noted at the L5-S1 without frank nerve root compression, displacement, or lateral recess stenosis. He noted that plaintiff's worst pain occurred through the lumbosacral junction with some spasms radiating into the lumbosacral region and thoracolumbar junction as well. As such, Dr. Armstrong diagnosed plaintiff with chronic lower back pain and thoracolumbar pain. He recommended no surgical intervention. (Tr. 478-479).

On November 29, 2006, records indicate that plaintiff had been off of his Lexapro. (Tr. 494-495). His PHQ score was 22, which is indicative of severe depression with occasional

5

suicidal thoughts but no ideation. Dr. Stone diagnosed plaintiff with severe depression and chronic back pain with a herniated disk at the L5-S1 level. He then advised plaintiff to restart the Lexapro. Plaintiff was given samples of Lexapro and was started on the indigent program to obtain this medication. He was also advised to contact New Hope for counseling. Dr. Stone indicated that plaintiff was not able to work due to the herniated disk in his back. (Tr. 494-495).

On June 30, 2006, Dr. Bill Payne, a non-examining, consultative physician completed an RFC assessment for the Administration. (Tr. 313-320). He reviewed plaintiff's medical records and concluded that plaintiff could perform medium level work involving standing and/or walking at least 2 hours during an 8-hour workday. (Tr. 313-320). Plaintiff even testified that he was unable to stand for longer than an hour before his right leg goes numb and he needs to sit down to rest. (Tr. 562-563). He also reported difficulty walking stating that he has to "stop for a little bit to rest because of that leg." (Tr. 563). We note, however, that the ALJ concluded that plaintiff remained capable of standing and walking up to 6 hours during an 8-hour workday. Based on the aforementioned evidence, it is clear to the undersigned that this finding is not supported by substantial evidence. Accordingly, remand is necessary to allow the ALJ to reevaluate plaintiff's RFC.

After reviewing the evidence of record, the undersigned is also concerned that the ALJ failed to include plaintiff's dyslexia in the hypothetical question she posed to the vocational expert. It has long been the rule in this circuit that a hypothetical question posed to an ALJ must contain all of claimant's impairments that are supported by the record. *See Ledoux v. Schweiker,* 732 F.2d 1385, 1388 (8th Cir. 1984). A hypothetical question posed to a vocational expert must capture the concrete consequences of claimant's deficiencies. *See, e.g., Roe v. Chater,* 92 F.3d

672, 674 n. 2 (8th Cir. 1996) (the hypothetical stated: "history of bipolar affective disorder, low average intelligence, developmental dyslexia, history of conversion reaction ... able to do more than simple, routine, repetitive work, not relying on written instruction or on written matter, and not requiring constant, close supervision to detail"). The vocational expert testified that plaintiff could perform work as a light assembly worker, sewing machine operator, and poultry eviscerator/dresser. The Dictionary of Occupational Titles description of each of these positions requires that the plaintiff have at least a level 1 ability to read. *See generally*, DICTIONARY OF OCCUPATIONAL TITLES, *at* www. westlaw.com. This requires that he be able to recognize the meaning of 2,500 (two- or three-syllable) words, read at rate of 95-120 words per minute, and compare similarities and differences between words and between series of numbers. As plaintiff's dyslexia would make it difficult for plaintiff to perform at this level, we believe that the ALJ should have included information plaintiff's dyslexia in the hypothetical question she posed to the vocational expert. As such, remand is necessary to allow the ALJ to do so.

The undersigned also notes that the record does not contain an RFC assessment prepared by plaintiff's treating doctors. Given plaintiff's history of back pain and leg numbness, we believe that the ALJ should have obtained an RFC assessment for plaintiff's treating physician. Therefore, on remand, the ALJ is directed to address interrogatories to him, asking him/her to review plaintiff's medical records during the relevant time period; to complete an RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for his/her opinion, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in

question. *Chitwood v. Bowen*, 0788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 24th day of November 2009.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE